HENRIETTA MENDOZA, Landlord, v. GEORGE SYME, Tenant.*

Municipal Court of the City of New York, Borough of Richmond, February 23, 1945.

* See, also, *Monterey Apts.* v. *Burt*, 183 Misc. 1060.— [REP.

*David Robinson* for landlord.

*George Syme,* tenant in person.

Baker, J. In this summary proceeding, the landlord seeks to evict the tenant upon the ground that he holds over beyond the expiration of his term. The tenant occupies the premises as a monthly tenant. His term is alleged to have been terminated by the service of the usual thirty-day notice, specifying, in accordance with the requirement of the Office of Price Administration's regulation, the ground upon which the landlord relies for removal of the tenant. The notice, served December 30, 1944, terminating the tenancy as of January 31, 1945, contains the following statement: " Termination of your tenancy is on the grounds of — Creating Nuisance " (*sic*).

The landlord contends that the facts established on the trial are sufficient to bring the proceeding within the provisions of paragraph (3) of subdivision (a) of section 6 of the Office of Price Administration's Rent Regulation for Housing in the New York City Defense-Rental Area (8 Fed. Reg. 13918), the

effect of which is to exclude from the protection afforded tenants by section 6 of said regulation, one who is "committing or permitting a nuisance" in the rented premises. The jurisdiction of the court to make the final order sought depends upon whether the acts and conduct of the tenant constitute the commission of a nuisance within the meaning of the regulation.

The tenant occupies the upper apartment of a two-family house owned by the landlord. The lower apartment is occupied by the landlord. There is a vestibule, used in common by the parties, opening upon which are adjoining entrance doors leading to the respective apartments. These doors are separated by a narrow partition. They are identical in appearance, of frame construction, each containing a large plate glass panel of about one-third the area of the door.

Early in October, 1944, the tenant posted behind the glass panel of his entrance door, in such manner as to attract the attention of persons approaching either entrance door, a placard or poster, measuring approximately ten inches by twelve inches, upon which was printed the following:

### ISRAEL

Come back to thy God — The Lord shall be the hope of His people. Look not to man or a Nation for help.

Cursed be the man that trusteth in man and maketh flesh his aim. Jeremiah 17-5.

In Jehovah, thy creator, is help and everlasting life.

Turn ye, turn ye, except ye repent ye shall perish.

Come, receive Yeshuah Ha-Moshiah, Messiah and King, the way back to the Father, and that rest and peace that yet remains for Jerusalem and the Children of God.

Come now and let us reason together saith the Lord, though your sins be as scarlet, they shall be as white as snow. Isaiah 1-18.

The Blood of Jesus Christ, God's Son, the sacrificial lamb, cleanseth us from all sin, and reconciles us to God.

The just shall live by faith.

### WHO IS A JEW?

One worshiping the God of Abraham and Moses.

His heart is circumsized and tender; it is one of flesh.

He is born again of God's Holy Spirit and worships God in Spirit and in Truth.

He has unfeigned, living faith, which worketh by love.

He loves justice and mercy and walks humbly with his God.

He has believed on, and received, his Messiah and King, Who is none other than Jesus Christ, the Son of God.

Such a one is a complete Jew.

"Come now, and let us reason together, saith the Lord: though your sins be as scarlet, they shall be as white as snow; though they be red like crimson, they shall be as wool." Isaiah 1:18.

Upon protest by the landlord, this placard was removed by the tenant who thereupon posted in its place another, of smaller size, bearing the legend, in large bold-faced type: '' Praise the Lord, ' Anyhow '.'' This latter sign was, in turn, replaced by still another, of about the same size as the first, reading as follows:

For the wages of sin is death; but the gift of God is eternal life through JESUS CHRIST our LORD.                                      Romans 6:23
*    *    *    *    *    *    *

A CHRISTIAN'S REWARD
A Christian possesses eternal life. For God so loved the world that HE gave HIS only begotten Son, that whosoever believeth in HIM should not perish but have Everlasting Life.                    John 3:16
*    *    *    *    *    *    *

Those who serve Him faithfully will also receive a reward. "And behold I come quickly; and my reward is with me, to give according as His work shall be."                                    Revelation 22:18
*    *    *    *    *    *    *

The only way to obtain this salvation is "Believe on the LORD JESUS CHRIST, and thou shalt be saved and thy house."            Acts 16:31
*    *    *    *    *    *    *

Are you ready to meet JESUS CHRIST in your sinful condition?
*    *    *    *    *    *    *

A SINNER'S PUNISHMENT
"The wicked shall be turned into hell and all the nations that forget GOD."                                                   Psalm 9:17
*    *    *    *    *    *    *

Many people think hell is not a bad place. But the scripture says "The rich man also died and was buried; and in hell he lifted up his eyes, being in torments."                                Luke 16:22 & 23
*    *    *    *    *    *    *

THIS is not a matter to be taken lightly. I warn you that hell is an awfull place in which to spend a long eternity, and beside all this, "Between us and you there is a great gulf fixed, so that they which would pass from hence to you cannot; neither can they pass to us, that would come from thence."                                Luke 16:26
*    *    *    *    *    *    *

But thank God there is a glorious way of escape.

Upon refusal of the tenant to comply with her requests that the signs be removed, the landlord caused a letter to be sent to the tenant by her attorney requesting that they be removed upon the ground that they were a source of annoyance. The letter was received by the tenant on or about October 26, 1944, but he refused, and continues to refuse, to comply with the request. The sign last above mentioned remained posted on the tenant's entrance door as of the date of the trial.

The landlord is a person of the Jewish faith. She testified that the matter contained in the placards caused her discomfort,

embarrassment and annoyance. Her friends, persons of her own religious faith, visiting her home, repeatedly questioned her about them. The burden of her testimony is that the placards were considered by her as a taunt and as a reflection on her religious beliefs.

The tenant, a Christian, testified, in substance, that the placards were intended merely as a form of greeting to his Jewish friends visiting his apartment; that the ultimate purpose thereof was to convert Jews to Christianity; that the matter contained therein was in no way intended to, and did not in fact, cast any reflection either upon the Jewish faith or upon persons of that faith.

I am of the opinion that the posting of the placards in the manner hereinabove described, and the tenant's refusal to remove them after request by the landlord constituted the commission of a nuisance within the meaning of paragraph (3) of subdivision (a) of section 6 of the Rent Regulation.

The Price Administrator has interpreted that section as follows:

*" Eviction of tenant whose conduct is objectionable to other occupants of the same building*

Questions have arisen concerning the eviction of a tenant who over a period of time has conducted himself in a manner which is objectionable to other persons living in the same building. Where under all the circumstances the tenant's conduct is wholly unreasonable, and interferes substantially with the comfortable enjoyment by other persons, of normal sensibilities, of premises which they occupy in the same building, it is not the purpose of Section 6 of the rent regulations to protect the possession of the tenant." (OPA Service, Rent; Interpretation 6(a)3-I; p. 200:2031.)

This administrative interpretation of the regulation, while not conclusive on the courts, is entitled to great weight. (*Lightbody* v. *Russell*, 293 N. Y. 492.) It constitutes a definitive statement of the meaning of the regulation by those charged with its enforcement. While necessarily general in terms, it seems sensible and fair, and not too difficult of application. The language of the interpretation makes obvious the fact it was never intended to place upon the word " nuisance ", as used in the regulation, any narrow, restricted or technical meaning. The word clearly means what any ordinary person would assume it to mean, namely, acts or conduct causing, and which might reasonably be expected to cause to normal persons vexation, annoyance or disturbance of a substantial nature, an unreason-

able and continued or repeated interference, by deliberate conduct, with the comfort or peace of mind of a person of normal sensibilities.

These placards contained matter at variance with the fundamental tenets of the landlord's religious faith. She felt that they were directed at her. They were placed in such position as to be clearly visible to all persons entering her apartment. To her, they constituted a continuing assertion that she and her friends of the same religious faith were wrong in their beliefs. I think the disturbance and annoyance she claims to have been caused by the matter contained in the posters was substantial and real, and not fanciful, capricious or imagined. There was substantial interference with her right to the comfortable enjoyment of her home, since the placards might reasonably have been construed by her as contemptuous, taunting and derisive.

It was evident upon the trial that the tenant, in the posting of the placards, intended no affront. He appeared to be as sincere in his convictions as the landlord was in hers. I think, however, that his motive and intent are unimportant upon the question whether his acts, in and of themselves, constituted the commission of a nuisance within the meaning of the regulation.

Accordingly, I find that the landlord is entitled to a final order awarding her possession of the premises described in the petition. The issuance of the warrant of eviction is stayed to the 31st day of March, 1945, provided that the tenant, within five days after service of a notice of entry of the final order, deposit into court all rent past due, together with an additional sum for use and occupation of the premises from February 1, 1945, to the end of the period of the stay, to be computed at the same rate as the rental heretofore paid. It is suggested that the landlord notify the Clerk of the court in writing as to the exact amount claimed by her, and send a copy of the notice to the tenant. In the event of a dispute as to the amount to be paid, the matter may be referred to the court.

Let final order enter in accordance herewith.